Today is Hester v. Ballard, and Mr. McIntosh, whenever you're ready, we'll hear from you. May it please the Court, Michael McIntosh on behalf of the appellant Warren Hester. Warren Hester's criminal trial was fundamentally broken. In violation of due process, the trial court barred Hester from introducing the piece of evidence most fundamental to his defense. DNA recovered from semen found in the 11-year-old victim's bedroom that didn't match Hester. And at the same time, the trial court unconstitutionally admitted highly prejudicial and graphic evidence of juvenile offenses committed by Hester more than a decade before trial. Evidence that, as the prosecutor acknowledged during closing argument, might well have made the difference between guilt and an acquittal. And to top it all off, the trial court refused to allow Hester's public defender to withdraw from the case based on multiple disabling conflicts of interest as recognized by the West Virginia State Bar. Now, could I clarify with respect to your argument about the admission of records from Ohio and D.C.? Is it your position that no, that there could have been no evidence at all about those prior crimes that the testimony, live testimony, couldn't have been admitted either? Yes, that's correct, Your Honor. But it seems as though the crux of your objection goes to the records, the availability of the records. What's the problem with live testimony that could be impeached? There are a couple of responses to that, Your Honor. First of all, under West Virginia's Child Welfare Act, which is the act applicable, as interpreted by the state habeas court, to defendants who have West Virginia juvenile proceedings, that act expressly bars any evidence or records offered or that come out of juvenile proceedings. And why does that matter? And is there no exception even under West Virginia law, because it seems to me that there is, for government records? No, Your Honor, I don't believe so. Not as evidence, as affirmative evidence of a defendant's guilt. That's relevant. I didn't understand your answer. You mean if they find a witness to a prior incident, the witness couldn't come forward to a court and testify? Not only the witness, the victim. The victim. Right, that's my understanding of West Virginia law, Your Honor. And your basis for that is? I thought that your challenge, and as best I could tell, the explanation of the challenge only went to the records. I couldn't quite see how you could say that it would apply to the victim herself. That's right. I think either under. It's a pretty extraordinary notion that a witness couldn't be called. Well, I think that certainly the witness could not be called to testify about the ultimate disposition. No, but about the victim's own experience. Right. Well, so even putting that to one side. No, that's the question. I do. Your Honor, under West Virginia law, my interpretation in cases like State v. Rye, State v. Van Isler is that. But your argument, the full faith and credit, your argument went to the records, that the records violated full faith and credit. Yes. So, but where, what is your authority for the proposition that the bar extends to the victim? The authority would be the Child Welfare Act itself, which refers to evidence offered in a juvenile proceeding, and so the testimony offered in that proceeding, which would be. Well, it's not being offered in that proceeding. That transcript is not being offered. This witness is coming forward and testifying anew in the trial against Hester and relating historical facts. That's right, Your Honor. But that's not the evidence in the juvenile proceeding. That's right. Certainly it's based on and is intimately connected with the testimony. But what difference does that make? It's testimony of the person involved in the current proceeding subject to impeachment. I don't, I really am having trouble understanding how your full faith and credit argument about records reaches that far. Well, I think the, so if I could step back. I think the equal protection argument based on the language of the West Virginia statute reaches the testimony, but looking at Your Honor's question based on the full faith and credit clause, that is directed primarily at the records and about the process for obtaining those records. And how does the equal protection clause help you on the live witness? I believe because under my reading of the West Virginia trial. Does that go back to the Child Welfare Act? Yes. It reaches the current live testimony of a witness in a different proceeding. It certainly, it reaches the prior testimony. So I think it's. Yeah, but we're talking about, we're not talking about the prior testimony. Yes. We're talking about current live testimony in a different proceeding subject to impeachment. Yes, that's right. And I think that authorizing testimony that rehashes testimony, even if not identical testimony. When you protect testimony that's been entered, evidence entered in a proceeding. If it goes so far, you're protecting the transcript, the documents, and everything else that is introduced in that proceeding. But that can't be construed to say witnesses in later years can't testify in a trial as to their own experience subject to cross-examination. I mean, that would be an extraordinary interpretation because it's not the evidence in that case. Yes, Your Honor. I think the intent of the West Virginia legislature was to reach that far. But you can't do so under the full faith and credit law because that only allows a state to give effect to official acts of other states. And the full faith and credit law doesn't reach official acts of other states. I mean, I'm sorry, the live testimony doesn't implicate official acts of other states. I think, Your Honor, it reaches the statutes of Ohio and D.C., which are official acts. But they're not in dispute. They're not at issue if you have a witness. Right, Your Honor. The acts of Ohio don't reach the testimony of the person, only the record. It's a record-based act. That's right, Your Honor. And that's why the full faith and credit argument focuses on the records, not the testimony. It seems to be going around in circles on that. And if I'm clear on it, it's okay for a state to say, you may not use my records for this purpose. But what I'm understanding is there's no way you can tell another state what type of evidence it may use at its trial that arises from testimony of other witnesses. I think that's right, Your Honor. Under that full faith and credit argument. You're basically conceding that the use of the witnesses, contrary to what you see, that's not something covered by full faith and credit. It might be something else, but it's not that. You're right, Your Honor. That part is relegated to the equal protection argument. The full faith and credit argument is based solely on the cold records that were introduced in Mr. Hester's trial. You don't win on full faith and credit. There's no idea for you to win on that. You don't have the records other than the, I guess, subsequent, I don't think, found them or what. I'm sorry? You don't win on full faith and credit based upon the witnesses' testimony. Based upon the records being entered into the trial. But on the witnesses' testimony, you don't win. On the full faith and credit. Yes, if it's based solely on the witnesses' testimony, but the witnesses also testified based on the records. So I don't think it can be artificially enforced. Actually, the Supreme Court has rejected that particular distinction. I think it's clear, and I think you recognize, too, that your argument doesn't, your full faith and credit argument rises and falls with the record. Yes, that's correct, Your Honor. That's exactly right. And on that score, the state, first of all, it's important to note at the outset, the state has never explained either in state court, state habeas court, federal court, how it obtained the records or the names of the victims to identify them and solicit them to testify for the state. And that informs the constitutional analysis here. Because it's clear that the trial court's decision to admit the juvenile evidence evinced an unconstitutional policy of hostility toward the laws of D.C. and Ohio. Because it not only deviated from standard practice in West Virginia, but also conflicted with the laws of D.C. and Ohio. If we were talking only about records from the juvenile proceedings, which is where your argument seems to be centered, I'm not sure that the exceptions in D.C. and Ohio would not allow law enforcement to use it. That's right, Your Honor. There's a possibility. And the bigger question is whether West Virginia has to accord its own rules of evidence to have them governed by the rules of evidence of other states. It seems to me not even under full faith and credit is that a proposition. That's right, Your Honor, and that is not our position. Because the position is that under ordinary rules of West Virginia law, West Virginia categorically bars the introduction of evidence of juvenile offenses. They can use it for law enforcement purposes. I'm sorry? They can use it for law enforcement purposes. They can't use it as affirmative evidence of guilt against a defendant. So under West Virginia law, as applied to – Well, that's a different issue of whether you can use it as a – that's a 403 argument. I don't believe so, Your Honor. I think there's a categorical exclusion under West Virginia law of juvenile records as affirmative evidence of a defendant's guilt. And that is the standard rule in West Virginia and the rule that West Virginia courts did not apply here in favor of a rule that contradicted not only standard West Virginia practice but also the laws of D.C. and Ohio. And if I may proceed to the due process argument, if there are no further questions at this time on the juvenile evidence argument, the state habeas court unreasonably failed to appreciate the fundamental nature of the DNA evidence to Mr. Hester's defense. It was a highly significant piece of evidence. Why? I'm a little unclear about that. Usually when there are challenges to the unavailability of forensic evidence, you don't have the evidence of the victim. What could be more powerful than that? And it doesn't appear, as best I could tell, that there were so many other possibilities that could have accounted for the semen stain given the number of people who used that room. And the fact that there was testimony that the defendant did not ejaculate. So there were a myriad of other explanations that did not go to the fact that did not take you beyond the fact of the victim's direct testimony. We don't usually have that when we're arguing about forensic evidence. Your Honor, I think there are two responses to that. First of all, there was no evidence introduced at trial that multiple adults engaged in sexual activity in that bedroom with those pillows in that home. But there was evidence that other people stayed in that room, including sexually active adults. I'm not sure that whether the witnesses were asked whether they were sexually active. Well, they were the aunt and her boyfriend, I believe. Yes, there was testimony. No, there was testimony that takes it beyond the merely speculative that there would be other explanations for that semen stain. That's right, Your Honor. But I think the broader problem is a problem reflected in the Holmes v. South Carolina. Can we just stay with the facts, though? What takes it beyond, given the victim's testimony, what is the pressing need to analyze and where would you go to analyze the DNA of the semen stain? Where does that lead you? That leads to evidence of third-party guilt. Why, when you would have to disbelieve the victim? That's exactly right, Your Honor, and that's exactly what the Supreme Court in Holmes said, that just because the prosecution's evidence, if credited, provided strong support for the defendant's guilt doesn't mean that evidence of third-party guilt is necessary. But there's no direct tie to a possible third party. There's no third party in the offing, as there was, I believe, if I'm recalling correctly, in Holmes. There was a particular third party identified in Holmes. I don't believe that's a requirement to specifically identify who. There has to be something that raises it beyond the level of the purely speculative, and what the Court decided here was that there wasn't. Well, Your Honor, I don't believe that's what the State Habeas Court decided. I believe the State Habeas Court decided that because the prosecution's evidence of guilt was strong, it necessarily followed that any evidence implicating a third party. And I'm trying to determine whether, under the deferential standard of AEDPA, that was an unreasonable application of law. That was an unreasonable application of law because it conflicted with the Supreme Court precedent. In Holmes, are you relying on Holmes? Yes. Okay, it doesn't, though. Or at least I think they're very factually distinguishable. Then I think it conflicts with the… Then you have to submit, you have to surmount AEDPA. Yeah, and then it conflicts with the more broad principle announced in cases like United States v. Schaeffer, which… And the principle that you're arguing for is what exactly? Is that evidence of third party guilt may not be excluded if it significantly undermines fundamental elements of the defendant's defense. And how does it do so here? And here it does so because the record shows the only defense for Hester was to say that a third party committed the crime and not him. And what was the evidence supporting that is what I'm asking. Well, some of the evidence could not be presented because of the conflict of interest, which is the third claim. What I'm focusing on is the evidence of the victim. And there was testimony that the defendant did not ejaculate so that the semen stain would have been completely irrelevant anyway. And there's also testimony that the victim didn't know what sperm was at the time of the assault, so crediting that statement. And what I'm trying to get to is affirmative, any affirmative link that takes you, that leads us to believe that there would be something relevant about it. Yes, Your Honor, I believe so because I don't think, if I may respond to the question, I don't think that a court can simply credit, unflinchingly credit the victim's testimony here. And so this evidence You would have to exclude Hester from the scene even. I mean, he was placed at the scene by several people on that day, but she recognized him and knew him. And so you have to create an entire new crime scene, scenario, on which there's no evidence to do so. I do believe there's evidence, and I'm happy to talk about that on rebuttal as I see my time is up. Okay. Thank you. All right, Mr. Dickey. Thank you, Your Honor, and may it please the Court, Gilbert Dickey on behalf of Appelli. I'd like to pick up on a few things that this Court was just discussing. In fact, there is very little reason to think that the actual testimony of the victims of the D.C. and Ohio assaults would have been excluded in West Virginia. There is West Virginia law that provides that records and testimony derivative from those records may be excluded from the case-in-chief in a later criminal proceeding. But this was not testimony derivative from the records. Of course, the victims themselves underwent the assaults and came and testified in person. And for this reason, this illustrates that even if there was some sort of problem under the Equal Protection and Full Faith and Credit Clause, which there almost certainly was not. It doesn't matter what the purpose of the testimony is being used for. If you're using it as direct evidence of guilt versus 4.4.B or perhaps in an impeachment-type situation, would that be different? I do not believe there's anything in West Virginia law that draws that distinction with regard to testimony of a victim of an assault by a juvenile. There may be a distinction with regard to a testimony derived from records. The typical case, I think, would be State v. Rye, which has been cited in the briefing. There was a fingerprint card, and I believe there was testimony about that fingerprint card. And so the testimony was derivative from the juvenile record, but I'm unaware of any decision in West Virginia court that draws that distinction for the purpose of testimony of the victim of a juvenile crime because, of course, the testimony is not derivative from there. And for that reason, we think that reason alone would be enough to foreclose the full faith and credit and equal protection claims. What about the Siemens stain? Yes, it's conceded by all parties that epidepherence applies to this claim, and there's simply no Supreme Court precedent that dictates a contrary result on the Siemens stain. The relevant precedent that's been cited by petitioner is Holmes v. South Carolina. Holmes v. South Carolina cited favorably a West Virginia law that provides you must show a direct link in order to admit evidence of third-party guilt and explained that the application of that rule was not before the court in Holmes v. South Carolina. Instead, what Holmes v. South Carolina dealt with was a narrow rule imposed by a judge in South Carolina that provided that when the evidence of guilt was strong enough, no evidence of third-party guilt could be put on. I'd also like to briefly discuss the facts underlying this because Holmes v. South Carolina is also a substantially different case on the facts. In Holmes v. South Carolina, there was a detailed proffer by the defendant of several witnesses who testified that they could place a third party at the location, and there was also a proffer of at least one witness who was going to testify about a third party who had all but confessed to them. Is the problem here that the third party, because there is evidence of a third party, there seems to be a full case of something there. Is the problem the timing that's not alleged or that we don't know that person? There's nothing to indicate they were there at the time. The problem is both the timing and the circumstances involved in this, and in Holmes v. South Carolina, there was testimony from several witnesses placing a specific third party there at the scene of the crime at the same time. And I think in Holmes there were witnesses who could testify that the other suspect admitted to the crime. Yes, that is correct. There was at least one witness, and there was a witness who also testified that the third party, who was the potential other guilty party, had discussed some sort of deal with law enforcement in order to basically set up. And that's just a... To set up the defendant. To set up the defendant, yes, Your Honor. There's a lot going on in this case, more so than maybe the sterile way in which we're looking at it, and that is that we've got this evidence here in terms of the DNA evidence that's on the pillows and the front of his mobile. Was there not evidence that the defendant here was involved with the mother? Was there some allegation to that extent? For the first time during trial, I believe the defendant testified that he had engaged in sexual acts with the mother. Did he also say that the child had come in and seemed to be doing this toast-sucking ritual with her mother? Yes, Your Honor. The defendant testified to that for the first time during his testimony as an attempt to explain how the child could have given all these detailed explanations. Was there any evidence that the mother had multiple sexual partners? Your Honor, I'm not certain if there was evidence of multiple sexual partners. There was a proffer made by the prosecution that there were two sexually active adult women who engaged in sex in this home. Was there evidence that these individual adults had engaged in activities in the child's room? The aunt and the boyfriend stayed in the child's room, and I believe there was a proffer that was never challenged that they may have had sexual activity there. There was also a proffer that pillowcase was used throughout the household. And I'd like to briefly explain, the State Habeas Court discusses all of these facts in detail, and Petitioner has faulted them for not discussing other facts, but part of the issue here is there was simply no proffer, as in Holmes v. South Carolina made, of any direct link. So here the State Habeas Court discussed all of the evidence that was available. The State Trial Court did not suggest you can't come forward with more evidence of this if there's a direct link. Instead the State Trial Court simply said, well, that's not enough to get us there right now if you have more we can... It suggested at least that if there was more they could revisit that later, but the State Habeas Court ultimately concluded that because there were two adult women having sex with multiple partners, there was nothing putting anybody else there. There was no evidence suggesting that there would have been seminal fluid from this assault introduced by any party, that this evidence was simply not of the same... That this evidence would lead to more distraction than it would probative value, and this is entirely consistent with West Virginia law that requires at least a proffer of some sort of direct link to a specific third party in order to... In order to introduce evidence of third party guilt at trial, which Holmes v. South Carolina explained was not before the court in that decision, and for that reason Holmes v. South Carolina cannot establish clearly established law that would go the other way, and edpedeference should apply to the due process claim. Just go back to the out-of-state convictions as a juvenile, and I'm trying to determine to what extent is this one of the issues before us regarding how that evidence was being used. The prosecutor made some pretty interesting arguments there. Were you the prosecutor in the case? No, Your Honor. Okay. And I'm just recalling, it seems like there was an argument or something to the fact of how would you feel if, members of the jury, you walked out of the courtroom and someone were to reveal to you that in fact this is happening, and you said, oh, my God, that little girl just told the truth. And is that part challenged or was it challenged through the constitutional arguments of due process that need to affect you? Yes, Your Honor. There was some statement made with regard to that in closing argument. Specifically what happened here was the prosecutor opened with a closing argument that focused heavily on the victim, in this case, testimony. And after the defense attempted to rebut that, the prosecutor again ran through all of the evidence, including the testimony, and then finally explained that, and explained that it believed this was sufficient to establish beyond a reasonable doubt, and then explained that even absent that, this evidence of out-of-state acts would establish this. And, of course, the evidence primarily relied on, as we were discussing earlier in this case, was testimony. In fact, it's in the record that almost no details about the most similar and most graphic assault, the D.C. assault, were not available to the state before the state located the victim. Specifically, after the D.C. victim testified in camera, the state explained that they had some sort of two-page, I believe it was a two-page form, but a partial record. It's unclear under what provision of D.C. law that record may or may not have been governed. And the state had used that and contacted the University Alumni Association of the university where the D.C. victim had been attending in order to locate her during trial, and she came and testified. And only after that were the broader records that actually provided details about, might have provided details about this assault, revealed after the petitioner, in an attempt to rebut this testimony, signed a waiver. I'd like to briefly address that one argument that the respondent made, which was that the state habeas court never said how these records were obtained. In fact, in footnote 19 of the state habeas court's, the circuit court's decision, it says that it's unclear when and how the prosecutor obtained the out-of-state records. In order for a petitioner to prevail on his claim, he's argued that there was some sort of surreptitious activity. The record does not suggest that. In fact, the prosecutor repeatedly suggested they had gone through the D.C. and Ohio authorities and explained that if there was a complaint, it was with the D.C. and Ohio authorities. And so, and under edpedeference, in order for a petitioner to prevail, there must have been evidence before the state habeas court that would have made its decision unreasonable. And they're simply, so the burden in this case was on the petitioner to present evidence to the extent they want you to credit some inference against the state habeas court. There were two omnibus hearings here, and any record on, that would allow this court to infer anything against the state was, or even more would make it unreasonable not to infer against the state has simply not been developed. And so, on that, the state would be entitled to factual deference, and the petitioner simply cannot overcome that. We, if there are no further questions, I'll sum up. We believe that edpedeference applies in full to each of these claims, including with hypothetical reasoning with regard to the full faith and credit and equal protection claims. And because there was no constitutional error here, the straightforward application of edpedeference is enough to foreclose petitioner's claims in this appeal. We'd ask that you affirm. McIntosh. Thank you, Your Honor. I'd first like to start off with the argument with respect to the due process claim and what exactly is the alternative defense other than just pointing to DNA recovered from semen that doesn't match Hester. I think here it's clear that Derek Mickles had a substantial connection to the crime, and a connection that Hester's counsel was foreclosed from investigating based on his prior representation of Mickles. Mickles was known to frequently visit the home. He was dating the victim's mother. He regularly babysat the children by himself. He was at the scene of the crime when police responded after the report of the sexual assault. He led the police to Mr. Hester and identified him. And as mentioned before, the prosecutor acknowledged that he could be the source of the semen recovered in the victim's bedroom. And I think all of that lends color to an alternative defense, which would be to present Derek Mickles, who had this intimate connection with the family, as the perpetrator of this crime. And that gives the DNA evidence outsized importance when linked to this potential alternate perpetrator. And moving on to the juvenile evidence claim, the state never has explained how it obtained the records. And the state here, on appeal, says that the state may have gone through D.C. and Ohio authorities, but the record is clear and the sites are provided in the brief that the state said those records aren't available to them. They don't have access to the records. They never went to D.C. or Ohio court to obtain the records, and it's clear under both D.C. and Ohio law that a prerequisite to obtaining and using the records is obtaining a court order. And here it's undisputed that the prosecutor has never obtained a court order. And so if the panel has no further questions, I respectfully request that the court reverse the judgment of the district court and grant Mr. Hester his release. Thank you. Mr. McIntosh, I understand you're court-appointed. Yes, Your Honor. I want to recognize your service and our appreciation for your service. Thank you. We'll come down and greet counsel and take a short break. This honorable court will take a brief recess.
judges: Paul V. Niemeyer, Allyson K. Duncan, James A. Wynn, Jr.